# CHARLESTON.

WILLIAM A. MATHENY v. JOHN BAKER WHITE *et als.*

Submitted March 8, 1921. Decided March 22, 1921.

1. TAXATION—*To Invalidate Tax Deed, Former Owner Must Show Defect or Wrongful Act in Assessment or Sale of Such Character As to Invalidate Proceedings.*

   As sec. 29 of ch. 31 of the Code makes a tax deed regular on its face, *prima facie* evidence against the former owner of the land conveyed by it, that the material facts therein recited are true and that such estate as is mentioned in sec. 25 of said chapter vested in the grantee therein, the former owner, in order to prevail in an attack upon such a deed,

must allege and prove a defect or some wrongful act in the proceedings under which the land was assessed, returned delinquent. and sold, of such character as will invalidate it. (p. 275).

2.  SAME—*Mere Defect in List Returning Land Delinquent Insufficient to Overthrow Tax Deed.*

A mere defect in a list returning land delinquent for nonpayment of taxes does not constitute ground for overthrow of a deed made in pursuance of a sale based thereon, provided it is not such as precludes the view that the paper is such a list, for it falls within the curative provisions of sec. 25 of said chapter. (p. 271).

3.  SAME—*Excerpt from Conclusion of Delinquent Tax List Held Insufficient for Overthrow of Tax Deed.*

Production of a mere excerpt from the conclusion of a delinquent list several pages in length, showing only a recapitulation of the contents thereof, by districts, cities and towns, under an incomplete sub-heading which, if complete, would indicate a recapitulation of a list of lands returned as having been improperly placed on the land books or as being unascertainable, but over an affidavit appropriate to a list of lands returned delinquent for non-payment of taxes, is not sufficient to overthrow a deed made pursuant to a sale based on such a list, on the ground of lack of a return of delinquency for non-payment of taxes. (p. 271).

4.  SAME—*Delinquent Tax List Held Insufficiently Established to Authorize Overthrow of Tax Deed.*

Nor is such a list shown to be a list of lands returned as having been improperly placed on the land books or as being unascertainable, by endorsement thereon and recordation therewith, of an attested copy of an order of the county court of the county in which it was returned, indicating that it was presented, examined, approved and allowed as such a list, because such attested copy is no part of the list nor of the proceedings of record in the clerk's office of the county court, pertaining to the assessment return and sale of the land. (p. 271).

5.  SAME—*Attested Copy of County Court Order Indorsed Upon Copy of Delinquent List Sent to State Auditor May Constitute Sufficient Certification of Allowance of List.*

Such attested copy. however, endorsed upon the copy of the list sent to the State Auditor, by the clerk of such court, constitutes a sufficient certification of the allowance of the list, and the list so sent up may show by its contents, that it is a list of land delinquent for non-payment of taxes and has

been misdescribed in the attested order performing the function of a certificate, wherefore such excerpt from the list is not sufficient to prove lack of certification thereof. (p. 271).

6. SAME—*Attested Copy of County Court Order on Delinquent List Held Insufficient to Prove Lack of Presentation to County Court and Approved By it.*

Being no part of the proceedings of record in the clerk's office of the county court, pertaining to the delinquency and sale of the land, such attested copy of a court order, appearing on the list, does not prove lack of presentation to the county court and examination and approval thereof by it, as a list of lands delinquent for non-payment of taxes. (p. 272).

7. EVIDENCE—*Proof as to Mode of Recordation of Delinquency List Held Insufficient to Enable Court to Say That List for Each Year Not Transcribed Into Book Provided Therefor.*

Proof that the delinquent lists of a county are kept by the clerk of its county court, in separate bound books, by years, the list for each year constituting one book and each book being so labeled as clearly to indicate its character and contents, is too uncertain and indefinite, as to the mode of recordation, to enable the court to say the list for each year is merely bound and labeled and not transcribed into a book provided for the purpose. (p. 272).

8. TAXATION—*Rule for Determining the Time for Sale of Delinquent Lands Stated.*

Properly interpreted, the provisions of sec. 6 of ch. 31, of the Code, prescribing the time for sales of delinquent lands, do not authorize a sale of such lands on the second Monday in December, if a term of the circuit or county court of the county is held in said month or the preceding month, on the first day of which sale cannot be made by reason of lack of time for posting and publication of notice, after receipt of the lists, wherefore the sale should be made on the first day of a circuit or county court for such county, whichever is held first, in the succeeding year, and a sale made on such court day, under such circumstances, is valid as to the time of sale. (p. 278).

9. STATUTES—*Unnecessary Implication Cannot Stand Against Express Terms Evincing Contrary Legislative Intent.*

In the interpretation of a statute, an unnecessary implication cannot stand against express terms evincing legislative intention contrary thereto. (p. 278).

Appeal from Circuit Court, Kanawha County.

Proceedings by William A. Matheny against John Baker White to vacate a tax deed. Decree for defendant, and complainant appeals.

*Affirmed.*

*McClintic, Mathews & Campbell,* for appellant.
*Henry S. Cato,* for appellee.

POFFENBARGER, JUDGE:

The decree of the Common Pleas Court of Kanawha County, which the Circuit Court of that county refused to disturb by the award of an appeal therefrom, brought up by this appeal, dismissed, on final hearing, a bill filed for the purpose of vacation of a tax deed conveying to the appellee, White, a tract of 7⅝ acres of land, based on a sheriff's sale thereof for non-payment of taxes for the year 1904.

The tax deed was obtained October 24, 1911. Telitha J. Gillispie and her husband, claiming some interest in the tract of land, executed a deed, December 18, 1911, conveying 5 acres thereof to J. G. Carper. On the next day Carper and his wife executed a deed purporting to convey to the said Gillispie and her husband, the undivided ½ of the 5 acres. On March 29, 1912, White and the Gillispies and the Carpers executed a lease on the 7⅝ acres to E. A. Mead, J. H. Mead and L. M. Whan, for oil and gas purposes. White had previously executed a lease on the same land to the Hamilton Company, which afterwards came into the hands of the William Seymour Edwards Oil Company. Not long before the tax deed was obtained, oil was discovered in the neighborhood of the land, and, since this controversy arose, a well of small production has been drilled on the land. Before he took his deed Col. White claims to have advised the owners of their right to redeem and given them a fair opportunity to do so. That ample time was allowed is clear. After obtaining it, he conveyed the surface to plaintiff's mother for a merely nominal consideration, if any, at all.

As no demurrer was interposed to the bill, its sufficiency seems to be conceded. The answer is very full and complete.

It fully, clearly and specifically denies every allegation of fact relied upon for the establishment of invalidity of the deed. Some of the numerous grounds of assault upon that instrument have completely failed and are no longer relied upon.

The argument submitted to sustain six of the seven assignments of error found in the brief filed for the appellant is based largely upon an exhibit filed with the bill, which, on its face, purports to be only a part of a record or paper, and admittedly is only a part thereof. A witness testifies that it is a certified copy of a part of the delinquent list for 1904. The document from which it was taken, as now found in the Clerk's Office of Kanawha County, is described as being a bound book, twenty or twenty-four inches long and about sixteen inches wide, and is designated the delinquent list for the year 1904, by a label or mark placed thereon.

The first thing on the exhibit is this incomplete caption: "List of property on the land book, for the County of Kanawha—thereon or not ascertainable for the year 190.." Following that are the headings of columns for names of persons charged with taxes, the estates held, the quantities of land, the descriptions and locations of the land, the distances and bearings from the Court House and the different funds for which taxes are charged. Under the designation "Grand Recapitulation," are the names of the magisterial districts, cities and towns of the county, opposite to which are columns of figures showing the aggregate amounts of taxes for which delinquent returns were made. This is followed by an affidavit admittedly made in the form prescribed by the statute. Lastly it sets forth what purports to be an attested copy of an order entered by the County Court of Kanawha County, on July 24, 1905, saying: "This day came J. A. Jarrett, Sheriff of this County, presented to the Court a list of Real Estate, which is improperly placed on the Assessor's Books, or is not ascertainable with the amount of taxes charged on such property for the year 1904, verified by his affidavit thereto appended, which said list being examined by the Court, and found to be correct, is therefore allowed."

The statute contemplates three delinquent lists: (1) a list

of lands improperly placed on the land books or not ascertainable; (2), a list of other real estate delinquent for non-payment of taxes; and (3), a list of persons and property other than real estate. The first two of these lists have different headings, but the form of verification of each is exactly the same. Code, ch. 30, sec. 21. The blanks for these lists are furnished by the State authorities. Only real estate returned in the second list is subject to sale,· and the heading of the exhibit is relied upon as showing return of lands required to be embraced in the first.

As the statute does not authorize sale of lands returned in the first one of the three lists, but does authorize sale of those required to be returned in the second, the heading of the exhibit and the court order thereon certified are treated in the argument, as proof that only one list was returned, a list of lands improperly charged or not ascertainable, and that no list showing a return of lands delinquent for non-payment of taxes was made out and filed. Upon this assumption, it is contended that the list returned constituted no basis for a sale; that no list authorizing sale was preserved and recorded by the clerk; that no such list was presented to the County Court or examined by it; that no such list was certified to the Auditor by the clerk of the court; and that the Auditor did not certify to the sheriff, for sale, lands returned delinquent for non-payment of taxes, ·but did attempt to certify  for sale lands improperly charged or not ascertainable.

Regular and accordant with statutory requirements, on its face, the tax deed is *prima facie* proof that all statutory provisions essential to a sale of the land thereby conveyed were complied with and that such title as it purports to convey vested in the grantee. Code, ch. 31, sec. 29. Hence, in every attack upon such a deed by the former owner of the land, he must affirmatively show, in order to prevail, that some essential step in the proceedings was omitted or some vitiating act performed. *Hogan* v. *Piggott,* 60 W. Va 541; *Mosser* v. *Moore,* 56 W. Va. 478; *Duquasie* v. *Harris,* 16 W. Va. 345. Recognizing this rule, the plaintiff has attempted to establish lack of a return of delinquency of the land in question for non-payment of taxes.

The exhibit relied upon as proof of such omission is clearly not sufficient. As the oral evidence discloses, it is a certified copy of the whole or part of one sheet or page of a document sufficient in volume to constitute a bound book found among the records of the clerk's office of the County Court, and presumtively, the last page thereof. If it were read in connection with all that precedes it, and in the light thereof, it might turn out to be, in its incomplete heading, and in the copy of the court order endorsed thereon, a misdescription and a misnomer of an otherwise complete and perfect list of lands returned for non-payment of taxes. And, notwithstanding the certificate of what purports to be a copy of the court order therein set forth, there may be an order of the court, showing presentation, examination and allowance of the list, as one of lands returned delinquent for non-payment of taxes. In other words, the numerous sheets on which the lands were entered and returned, constituting the list, may have been properly headed, "List of real estate in the County of Kanawha delinquent for non-payment of taxes thereon for the year 1904," and the recapitulation made up on a blank intended for the other list, the list of lands improperly charged, and the affidavit appended thereto. In such case the list itself would be properly headed and be complete, perfect and unclouded but for this incomplete expression: "List of property on the land book, for the County of Kanawha— thereon or not ascertainable for the year 190—," at the end thereof and above the recapitulation. As has been stated, the affidavit is, in terms, the one prescribed for the list of lands returned for non-payment, wherefore there is no defect in it. The erroneous designation of the recapitulation is not controlling, for the statute does not in terms require a recapitulation. Besides the heading on the exhibit is incomplete. It names no year and another blank is unfilled. Read in connection with what may have been a dozen or more other and preceding pages properly and fully headed, it could not be regarded as anything other than an erroneous caption of the recapitulation, not the list, left or entered thereon by mistake. If it could not be wholly disregarded, it would constitute nothing more than a slight defect in the list.

The attested copy of the court order appended to the list, as shown by the exhibit, and describing it as a list of lands improperly charged or not ascertainable, may be disregarded upon the inquiry as to the character of the list returned, because, the statute nowhere requires its endorsement on, or recordation with, the delinquent list. After the list has been approved by the County Court, it is the duty of the clerk to certify a copy thereof to the Auditor and record the original. Code, ch. 31, sec. 24. He is not required to endorse any certificate or court order upon the original. Hence, this attested copy of the order is no part of the proceedings of record in the Clerk's Office of the County Court.

Though there may have been but one affidavit to the list from which the exhibit was taken, that fact does not disprove sufficiency of the list. Only one list of real estate may have been returned and that may have been one of lands delinquent for non-payment of taxes.

If the list returned was such as we have shown, a merely defective one, the defect therein would not justify vacation of the deed. It is expressly and clearly cured by sec. 25 of ch. 31 of the Code, saying: ''And no irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, * · * * shall, after the deed is made, invalidate or affect the sale or deed.''

Treated as the clerk's certificate of the list to the Auditor, the attested copy of the court order is sufficient. A manifestly erroneous designation of the list in a clerk's certificate could not change its character. It would correctly define itself by its contents, even though a single erroneous expression therein should be inconsistent therewith. The order or certificate says the list was presented, examined, found to be correct and allowed, and the erroneous designation thereof, in the case supposed, would be corrected by its true character as disclosed by its contents. The statute requires certification of copies of the lists, but it prescribes no form of certificate. A copy of the court order allowing the list is usually endorsed upon the original, copied with it for the certificate and recorded, but it can operate only as a certificate, for the

reason already stated. It is, however, an indorsement upon the copy, signed by the clerk, saying the list was presented, examined, found to be correct and allowed. Then the document so certified proves itself as to its character.

What has been said fully disposes of the contention that the Auditor's certification of the lands in the list to the sheriff for sale, as being delinquent for non-payment of taxes, was unauthorized and invalid. What is relied upon as proof of return of a list on which a sale could not be predicated and certification thereof to the sheriff, is wholly insufficient for that purpose.

There is no proof that the county court did not approve and allow the list as one of lands returned for non-payment of taxes. Despite the attested copy endorsed on the exhibit, there may have been a court order so allowing it, and the proof does not negative its existence. The court ought not to be asked to infer non-existence thereof from the exhibit, because, if it does not exist, the fact could have been shown. *Stout v. Sands,* 56 W. Va. 662, 669. Strictly speaking, the attested copy should not have been on the original list. The order should have been sought in the order books of the court.

Nor is there clear evidence that the list was not properly recorded. Though one witness was made to say the original list was merely bound, instead of transcribed in a book, by assumption that it was, in questions propounded to him, he distinctly said there was a book in the office of the kind required by law to be kept for recordation of such lists. Another witness said the book from which the exhibit was taken was "a book such as we record the delinquent lists in each year." Both describe it as a book labeled as the delinquent list for 1904, and say there was a book of that kind for each year. If what is claimed is true, it was susceptible of clear proof in less than a dozen words and the burden of proof thereof was on the plaintiff. It is not the province of courts to raise out of equivocal expressions what is manifestly susceptible of positive proof if it exists. *Stout v. Sands,* cited.

The remaining inquiry is whether the land was sold at a time prescribed by law. If it was not and the fact appears

in the proceedings of record, the irregularity is fatal. It is not cured by any statute. *Hardman* v. *Brannon,* 70 W. Va. 726. Although the statute required delivery to the sheriff of the Auditor's list containing the land in question on or before November 1, 1906, it was not delivered earlier than November 3, 1906. At any rate, there is a preponderance of evidence against delivery before the last mentioned date. That delivery was too late to enable the sheriff to sell at the November term of the County Court, or the December term of the Circuit Court of Kanawha County, held in that year. It was advertised for sale on December 11, 1906, under the impression that sale thereof could be made on the second Monday of said month, but there were errors and irregularities for which such sale was abandoned, notice of a continuance thereof until February 11, 1907, given and the property readvertised for the time and in the manner prescribed by law. The sale seems to have been advertised for the second Tuesday instead of the second Monday in December, and the notice published only in Sunday issues of a daily paper. If the statute authorized sale on the second Monday of December, under the circumstances, the list may have been received in time for sale on that date, but our interpretation of the statute renders it unnecessary to pass upon that question.

Sec. 6, ch. 31, Code, requires sale to be made "on the first day of the next November or December term of the circuit or county court of the said county, whichever may be held first, after the posting of said list and the publication of said notice as herein required; or if no term of either court be held in said county in November or December, then on the second Monday in December next thereafter." An exception is provided in these words: "If the lists herein named be not received by the sheriff in time to publish such notice and make such sale in the month of November or December, as herein provided for, then said sale shall be commenced on the first day of a circuit or county court for such county, whichever may be held first, in the year next after the publication of such notice of sale." If the lists were not received in time to sell in November or December, within the meaning of these provisions, then the second notice of sale, fixing upon Feb-

ruary 11, 1907, as the time, and the sale made thereunder were valid, for that day was the first day of the first term of court held in the succeeding year. Under the circumstances, the statute would not have been literally followed by a sale on the second Monday in December. Sale on that day can be made, only when no circuit or county court is held in November or December. In this case there was a term of court in each of those months. If the terms of the exception could be ignored, those of the other provision might be interpreted as authorizing sale on the second Monday in December, in case of failure to receive the lists in time for a sale on a court day in November or December, when there is such a term. But the terms of the exception forbid such interpretation. In other words, they forbid modification of the meaning of the words of the main provision, by implication. They say the exception shall be operative and controlling, unless the lists shall have been received in time to advertise and sell as provided in the section, that is, on a court day in November or December, or on the second Monday in December, if no court is held in November or December. The phrase, "as herein provided for," found in the exception, extends its operation to all cases not falling within the terms of the general provision. If a term of court is held in either of the months named, and the lists are not received in time therefor, the general clause does not say the sale may be made on the second Monday in December. Sale can be made on that day, agreeably to the words of the general provision, only in the event that no court is held in November or December, and the exception makes the words, "if no term of either court be held in said county in November or December," binding, by reference thereto and adoption thereof. A mere unnecessary implication cannot stand against express words. *Waggy v. Waggy,* 77 W. Va. 144; *Bank v. Thomas,* 75 W. Va. 321; *Bank v. Jacobs,* 74 W. Va. 525.

From this conclusion it results that the sale was made on the day authorized by law, after due advertisement and posting of the list, and it is immaterial that there were mere purpose and preparation to sell on a different day.

Seeing no error in the decree complained of, we will affirm it.

*Affirmed.*