# CHARLESTON.

## J. F. WOODYARD *v.* F. C. KUHN.

Submitted November 15, 1921.    Decided November 29, 1921.

1. TAXATION—*Oil and Gas Interest May be Assessed Separate from Surface and Returned Delinquent and Sold for Non-payment of Taxes Thereon.*

   Where the owner of the oil and gas in a tract of land is not the owner of the remainder thereof, he may have said oil and gas interest assessed to him separately from the surface and other interests, and in case he does so and fails to pay the taxes assessed against the same, it may be returned delinquent for the non-payment of such taxes, and sold by the sheriff therefor under the provisions of ch. 31 of the Code. (p. 672).

2. SAME—*Tax Deed Not Invalidated for Failure of Assessor to Return Land Books at Proper Time or of Clerk to Correct Additions, Proof and Recapitulations Thereon.*

   A tax deed made by the clerk of the county court to a purchaser at a sale for delinquent taxes will not be set aside for the reason that the assessor did not return his land book showing such assessment to the clerk of the county court on or before the 20th of July of the year for which said assessment was made, as provided by § 118 of ch. 29 of the Code, or because the clerk of the county court did not correct the additions, proofs and recapitulations in said land book, as provided by § 116 of ch. 29 of the Code, it not appearing that the owner was in any wise prejudiced or misled thereby. (p. 674).

3. SAME—*Impertinent Matter in Delinquent List will Not Render it Invalid.*

   A list of lands delinquent for the nonpayment of taxes thereon is not rendered invalid because of the inclusion therein of impertinent matter at the end thereof, such as a list of lands improperly entered upon the land book, or unnecessary matter, such as a summary by districts of the amount of taxes delinquent, to which is appended the affidavit of the sheriff required by statute to be made to the delinquent list, and the order of the county court allowing said delinquent list. The inclusion of such impertinent and unnecessary matter is surplusage. (p. 675).

4. SAME—DELINQUENT LIST—*Order of Court Allowing and Certificate of Clerk Admitting it to Record Sufficient to Identify Same as List Acted Upon by Court.*

   The order of the county court attached to a list of lands

returned delinquent for taxes, reciting that the foregoing list
is found to be correct and is allowed, and the certificate of
the clerk admitting said list, together with said order, to rec-
ord in the delinquent land books of said county, sufficiently
identifies the same as the list acted upon by the county court.
(p. 676).

 5. PLEADING—*Bill to Satisfy Tax Deed—Sufficiency of.*

An allegation in a bill to set aside a tax deed that one of
the requisites to the validity of such a deed has not been
compiled with, because done in a manner which it is contended
is not authorized by law, depends for its effectiveness upon the
pleader's construction of the law being correct, and will fail
should it turn out that such interpretation is not the correct
one.   (p. 676).

 6. TAXATION—TAX DEED—*Failure of Clerk to Affix Seal May be
Cured by Re-execution of Deed within Time, which Clerk
May Make a Deed for Land Purchased at Tax Sale.*

Where a purchaser at a tax sale, after the expiration of
the time allowed to redeem, gives the notice required by law
that he will demand a deed, and has the county surveyor file
the report required, and the clerk of the county court exe-
cutes a deed attempting to convey the land so purchased at
the tax sale, but omits to affix his seal thereto, the said pur-
chaser, upon discovering this failure, may have the execution
of the deed completed by having the clerk affix his seal, and
the said deed reacknowledged and readmitted to record, with-
out giving a new notice, or having another report made by
the county surveyor, provided such reexecution of the deed
is within the time within which the law permits the clerk to
make a deed for land purchased at a tax sale.   (p. 678).

 7. SAME—*Report of County Surveyor of Land Purchased at Tax
Sale Time Within Which Same May be Filed.*

The report of the county surveyor of a tract of land pur-
chased at a tax sale filed after three months from the expi-
ration of one year from the tax sale, and before the expira-
tion of two years therefrom, is within the time provided by
the statute.   (p. 679).

 8. SAME—TAX SALE—*Purchaser of Entire Oil and Gas Interest
Entitled to Deed Without Survey Upon Surveyor's Report.*

Where at a tax sale a purchase is made of the entire inter-
est of the owner in a tract of oil and gas, the purchaser is
not required to have a survey made thereof before procuring

a deed, but may have such deed upon the presentation of a surveyor's report, as provided by § 18 of ch. 31 of the Code. (p. 679).

9. SAME—TAX DEED—*Not Invalidated for Failure of Sheriff to State in Receipt Amount of Taxes Delinquent.*

The failure of the sheriff to state, in the receipt given by him to the purchaser at a tax sale, the amount of taxes delinquent upon a tract of land sold by him, will not invalidate a tax deed made pursuant to such purchase. Such an omission is cured by the provisions of § 25 of ch. 31 of the Code. (p. 680).

(LIVELY, JUDGE, absent.)

Appeal from Circuit Court, Kanawha County.

Suit by J. F. Woodyard against F. C. Kuhn. Decree for defendant, and plaintiff appeals.          *Affirmed.*

· *Thomas Coleman*, for appellant.

*P. H. Murphy* and *Chas. J. Hogg*, for appellee.

RITZ, PRESIDENT:

The plaintiff by this appeal seeks reversal of a decree of the circuit court of Kanawha county sustaining a demurrer to and dismissing his bill brought to set aside a tax deed.

It appears that in the year 1915 the plaintiff was the owner of the oil and gas under a tract of 153-1/3 acres of land situate in said county of Kanawha, and that the same was assessed to him upon the land books separately from the surface and other interests in the land. The taxes thereon were not paid for that year, and the sheriff returned the same delinquent therefor, and in December, 1917, said taxes still remaining unpaid, the same was sold by the sheriff, and purchased by the defendant F. C. Kuhn. The plaintiff did not redeem said land from the delinquency within the time required by law, and after the expiration of such time a deed was made to the defendant by the clerk of the county court conveying said oil and gas interests, and this suit is brought for the purpose of setting aside that deed.

Many grounds are set up in the bill which it is alleged make the deed invalid, and require that the same should be set aside, and the plaintiff allowed to redeem his land from the delinquency for which it was sold. The first of such

grounds. and the one upon which principal reliance is had, is that there is no law in operation in the State of West Virginia authorizing the sale of an oil and gas interest by the sheriff for the non-payment of taxes, the contention being that such sales are limited by law to lots or tracts of land returned delinquent for the non-payment of the taxes thereon, and that the oil and gas under a tract of land are not included within this authorization, wherefore some other means must be resorted to to collect the taxes in case the same are not paid by the owner of such interest. The provision of law in regard to the sale of lands delinquent for non-payment of taxes is contained in § 6 of ch. 31 of the Code, and it is true, as argued by the plaintiff, that it does direct or authorize the sale of "tracts or lots of land" returned delinquent for the non-payment of taxes. The plaintiff argues that formerly the owner of the oil and gas in a tract of land could not have the same assessed separately to himself; that nothing less than the whole estate in the land could be entered upon the land books; that when this was changed by statute so as to permit the assessment of the mineral interests, or other interests, separately, there was no change in the statute authorizing the sale of lands returned delinquent for the non-payment of taxes assessed against them, and because there was no change in this regard, it is argued that it was not intended that these mineral interests, when assessed separately, should be sold by the sheriff in satisfaction of the taxes delinquent against the same. We do not think there is any merit in this contention. The word "land" used in the section referred to means real estate, and when the legislature authorized the sale by the sheriff of all lots and tracts of land delinquent for the non-payment of taxes it was the equivalent of saying all lots or tracts of real estate upon which the taxes had not been paid. The owner of the oil and gas in a tract of land, or the coal in a tract of land, or the timber upon a tract of land, is as much the owner of a tract of real estate as the owner of the surface. Our tax laws authorize the division of the land horizontally as well as vertically, and when it is so divided the owner of each of the divisions is none the less the owner

of a tract of land because he does not own all of the interests therein. The fact that the legislature did not change the law providing for the sale of lands for delinquent taxes at the time it authorized the assessment of mineral interests separate from the surface does not necessarily mean that such mineral interests should not be sold in the same manner as any other interest. The law providing for the sale of lands for delinquent taxes did not need any amendment in order to furnish authority for the sale of any interest in real estate which an owner thereof could enter upon the land books and have assessed with taxes.

The second and third grounds alleged against the tax deed may be treated together. It is asserted that the clerk of the county court did not correct the land book deposited by the assessor in his office for the year 1915 as required by § 116 of ch. 29 of the Code, nor did said clerk correct the additions, proofs and recapitulations therein as required by said section; and further that no copy of the land book was filed by the assessor in the office of the clerk of the county court on or before the 20th of July, 1915, as required by § 118 of said ch. 29, for either, or both, of which reasons said assessment does not furnish the basis for a valid tax deed. Section 25 of ch. 31 of the Code provides that the title of the former owner will vest in the purchaser at a tax sale, notwithstanding any irregularity in the proceedings, unless such irregularity appear on the face thereof, and be such as materially to prejudice and mislead the owner of the real estate. While it may be said that these facts appear from the record, there is nothing to indicate that the owner would have been prejudiced or misled in any way thereby. Admittedly the estate owned by him was subject to taxation, and he does not question the propriety of the assessment made against it by the assessor. How then can it be said that he was prejudiced or misled by the failure of the assessor to return the land book within the time provided by the statute, or the failure of the clerk of the county court to check it over and correct it for errors found, when it is not even suggested that there is any error so far as this assessment is concerned? In *Male* v. *Moore,* 70 W. Va. 448

it was held that an assessment in a wrong name, in order to invalidate a tax deed made pursuant to a sale thereunder, must be so erroneous as to mislead the party whose duty it was to pay the taxes. A similar holding was made in *Hamil* v. *Glover,* 74 W. Va. 152; and in *Hogan* v. *Piggott,* 60 W. Va. 541, it was held that the fact that a city collector made his return of delinquent real estate a year after the date fixed by law therefor would not invalidate a tax deed; and in *Whitlock* v. *Hawkins,* 105 Va. 243, it was held that the failure of the assessor to return his assessments until after the time fixed by law therefor does not invalidate the same; and in *Bridgewater Mfg. Co.* v. *Funkhauser,* 115 Va. 476, it was held that an assessment would not be invalidated because of errors, omissions or irregularities that do not prejudice the rights of the taxpayer. It is insisted by the defendant that the assessor is not required to return his land book to the county clerk before the 20th of July, for the reason that since the creation of boards of review and equalization such book must be returned to such boards, and by them reviewed and examined. This contention may be correct, but we consider it unnecessary to discuss the same in this case, for the reason that even though the law does provide for the assessor returning his assessments to the county clerk, as contended for by the plaintiff, still the failures pointed out in that regard are not of that character which render the assessment invalid.

It is next asserted that the tax deed is invalid for the reason that it does not appear from the record in the county clerk's office that the delinquent list was ever allowed by the county court, or that the county court ever directed the clerk to certify the same to the auditor, or that the clerk did in fact ever certify the same to the auditor; and further, that the said tax deed is invalid because there is no affidavit of the sheriff appended to the said delinquent list, as required by law. As a basis for these contentions, it is asserted that the delinquent list recorded in the county clerk's office shows the lands delinquent for the nonpayment of taxes covering several pages of the delinquent record book, following which is a list of lands improperly entered

upon the land books, followed by a summary or recapitulation by districts, showing the amount of delinquent taxes for each district, and then to this is attached the sheriff's affidavit required by law to be made to the list of delinquent lands, and the order of the county court approving said delinquent list. It is asserted that because the affidavit in the form provided to be made to the delinquent list, and the order of the county court allowing the delinquent list, follow the summary aforesaid and the list of lands improperly entered upon the land books, instead of immediately following the list of delinquent lands, that it cannot be read as referring to the list of delinquent lands. The affidavit itself shows that it is made to a list of lands delinquent for the nonpayment of taxes, and the order of the county court refers to a like list. The fact that this delinquent list may include impertinent matter, such as the list of lands improperly entered upon the land books, or unnecessary matter, such as the summary above referred to, cannot invalidate the same. These matters are simply surplusage, and may be treated as if they had not been included in the list at all. A delinquent list very similar in character to the one involved here was involved in the case of *Matheney* v. *White*, 88 W. Va. 270, 106 S. E. 651, where we held that the inclusion of such matter in the delinquent list did not affect its validity.

It is also contended that the tax deed is invalid because the certificate appended to the list recorded in the delinquent land book does not show that it was the same list that was presented to the county court and allowed by it. There is no merit in this contention. The list itself purports to be a list of land returned delinquent for the nonpayment of taxes thereon, and the sheriff makes the affidavit thereto as required by law. The county court's order shows that such a list was presented to it. This sufficiently indicates that the list recorded in the book is the list passed upon by the county court. The county court's order is appended to the list actually recorded, and shows that it was presented to it and allowed, and the clerk's certificate shows that the foregoing list, which necessarily refers to the list to which the

county court's order is appended, was presented and record-
ed in his office as required by law. This list is identified in
the way such lists are usually identified. Of course the
county court could have in its order shown that the list was
composed of so many pages marked in a certain way, and
that would have identified it more definitely, and the clerk's
order recording the same might have done likewise, but there
was no necessity for doing this when the means of identifi-
cation actually used are entirely sufficient for the purpose,
as is the case here.

It is next insisted that no notice of sale was ever given
by the sheriff, and this is based upon the fact that this oil
and gas interest was advertised to be sold under the heading
of "tracts or lots of land." What we have heretofore said
sufficiently disposes of this contention.

It is next alleged upon information and belief that no sale
of the said oil and gas interest, or of any interest whatever,
located in the said county of Kanawha, was ever made by the
sheriff of said county for the delinquent taxes thereon for
the year 1915, and that no return of sales of such lands with
the certificate of oath required by law was made by such
sheriff, and that no affidavit whatsover was made to the list
of lands purported to have been sold in said county for the
nonpayment of taxes for said year 1915, for which reasons
it is contended the clerk was without authority to make the
tax deed complained of. It is a little difficult to understand
this allegation of the bill. It is asserted therein that no
sales were made by said sheriff, and to support this allega-
tion an affidavit is exhibited which it is said is attached to
a purported list of sales. The list itself is not exhibited with
the bill, so that we are not informed as to what it shows, but
the affidavit made to the list which is exhibited with the bill
is in the form required by law, and states that it contains
a true account of all real estate within the county which
had been sold to individuals, together with the names of the
purchasers who purchased the same; and further, the sheriff
swears that he was not interested at said time, or at any
time, directly or indirectly, in the purchase of said real
estate. It is averred that this affidavit is attached to what

purports to be a list of sales made by the sheriff. Wherein the list is insufficient, or the affidavit is insufficient, is not pointed out, and we can see no basis for this allegation, unless it be the contention of the plaintiff that an oil and gas interest is not properly the subject of sale by the sheriff for delinquent taxes, which contention we have heretofore disposed of.

It appears in this case that after the defendant gave notice that he would demand a deed for the oil and gas interest purchased by him, he had the county surveyor make a report of the tract of oil and gas belonging to the plaintiff which he had purchased at the tax sale, and that pursuant to this notice, and this report, the clerk attempted to make a deed conveying the same to the defendant, but by inadvertence failed to affix a seal thereto. This purported deed without the seal was duly recorded. A short time thereafter the defendant, discovering that there was no seal affixed to the purported deed, had the clerk affix a seal to his signature, reacknowledge the deed, and had it again recorded. It is contended that the first deed without the clerk's seal was void, and that what is called the second deed was made by the clerk without any notice having been given as required by law, and without any report of the county surveyor as the law provides, and that it does not show upon its face that it is a deed of correction. It sufficiently appears from what we have said that there was really but one deed executed. When the deed was first delivered by the clerk it was improperly executed in that he had omitted to affix his seal thereto. The execution of the deed was thereafter completed by the clerk affixing his seal after his signature and reacknowledging the deed. There are not two deeds. If the deed as first executed was good without the seal of the clerk, then it was sufficient to vest the title of the plaintiff in the defendant. If the paper as executed by the clerk was void, as the plaintiff contends, and as the defendant tacitly admits, for lack of a seal, then it was not a deed, and it was the duty of the clerk to complete its execution so as to make it conform to the requirements of the law. There was no necessity for giving another notice or for hav-

ing another report made by the surveyor before thus completing the paper.

It is also insisted that the tax deed is void because the defendant did not file, or cause to be filed, with the clerk of the county court of Kanawha county, a survey or report required by law within the time required by the statute. It appears that this sale was made on the 3d day of December, 1917, and the report of the surveyor was filed with the clerk of the county court on the 18th of March, 1919. The statute, § 19 of ch. 31, provides: "But before such purchaser, his. heir, devisee or assignee shall be entitled to such deed he shall, within three months, after the expiration of the said one year from the day of sale and between that day and two years after the day of sale by the sheriff, file, or cause to be filed with the clerk of the county court of the county in which the real estate was sold, or lies, the survey or report mentioned in the seventeenth and eighteenth sections of this chapter." This language, it is true, is a little confusing, but it is clear that the meaning is that the report shall be filed at any time after three months from the expiration of one year from the day of sale and before two years from said day. In other words, the filing of the report must be made before the expiration of two years from the day of sale. The record here shows that the report was filed immediately upon the expiration of the three months' period provided for in the statute, and before the expiration of two years from the day of sale, so that there is nothing in this contention.

It is also contended that the deed is void and should be set aside for the reason that no survey was made, but only a report made by the surveyor. Section 18 of ch. 31 does not require a survey to be made where the tax purchase is of the whole of the tract of land sold, as was the case here.

It is also objected to the validity of the deed that the same purports to convey the whole of the estate in the tract of land described instead of simply the oil and gas. The deed is not subject to this criticism, even if that would be effective to render it invalid. The deed recites that the defendant became the purchaser of the oil and gas in that certain tract

of land which is described in the deed, and the deed then conveys to him the real estate so purchased. From this it clearly appears that the real estate purchased was the oil and gas in the tract of land, and the conveyance is of just what was purchased.

It is further insisted that the deed is void because it appears that there were no taxes delinquent upon this oil and gas interest, and this, it is said, is shown by the fact that the certificate given by the sheriff to the purchaser at the sale does not set out the amount of the taxes for each separate purpose due and unpaid, but simply gives the total as $15.45. This can make no difference, inasmuch as the failure to give this receipt to the purchaser would not affect the validity of the sale. Any defect in this, or any failure in this regard, would be clearly cured by the provisions of § 25 of ch. 31 of the Code.

We have carefully gone over all of the objections raised by the plaintiff to the validity of this tax deed, and we are of the opinion that none of them are of such character as to render it invalid, and that the court below properly sustained the demurrer to the bill. The decree complained of is therefore affirmed.

*Affirmed.*